UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JODY CARR,<br><br>                    Plaintiff,<br><br>     v.<br><br>WARDEN CARLYN; LT. ANDERSON; SGT. ROANE; C/O RIVERA; C/O DAVIDSON; and CPL. HARTNETT,<br><br>                    Defendants. | Case No. 3:10-cv-00625-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

Plaintiff Jody Carr, a prisoner in the custody of the Idaho Department of Correction (IDOC), is proceeding pro se and in forma pauperis in this civil rights action. On April 25, 2011, United States Magistrate Judge Candy W. Dale entered an Initial Review Order in this case pursuant to 28 U.S.C. §§ 1915 and 1915A, allowing Plaintiff to proceed only on his retaliation and access to courts claims against Defendants Hartnett, Rivera, and Davidson. (Dkt. 7.) The case was reassigned to the undersigned District Judge on November 21, 2011. (Dkt. 22.)

Now pending before the Court are (1) Plaintiff's Request for Extension of Time to File Subpoenas and Requests for Subpoenas (Dkt. 36); (2) Plaintiff's Motion for Summary Judgment (Dkt. 37); (3) Defendants' Motion for Summary Judgment (Dkt. 38); and Plaintiff's Emergency Request for Emergency Injunctive Order (Dkt. 44).

**MEMORANDUM DECISION AND ORDER - 1**

Having carefully reviewed the record, the Court finds that the parties have adequately presented the facts and legal arguments in the briefs and record and that the decisional process would not be significantly aided by oral argument. Therefore, the Court will decide this matter on the written motions, briefs and record without oral argument. D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following Order granting Defendants' Motion for Summary Judgment, denying Plaintiff's Motion for Summary Judgment, and dismissing this case with prejudice.

## PRELIMINARY MOTIONS

**1.      Request for Extension of Time to File Subpoenas and Requests for Subpoenas**

In his Request for Extension of Time to File Subpoenas and Requests for Subpoenas, Plaintiff does not describe what type of subpoenas or requests for subpoenas he wishes to submit. Because he states that the deadline for him to file such documents was April 30, 2013, however, the Court concludes that he is referring to subpoenas duces tecum, which involve the pretrial production of documents by nonparties. (*See* Order dated Feb. 8, 2013, Dkt. 35, at 6) (setting April 30 as the deadline for subpoenas duces tecum).

Plaintiff signed and presumably mailed his Request on June 11, 2013, nearly six weeks after the April 30 deadline for subpoenas duces tecum and nearly two weeks after the close of all discovery. Plaintiff claims that he was severely ill with C-diff (or clostridium difficile), an antibiotic resistant bacteria, until April 9, 2013 (Dkt. 36 at 3),

but he does not explain why he did not file his request for an extension within the remaining 21 days once he recovered. Further, Plaintiff does not attempt to explain how reopening the discovery period for purposes of nonparty document production is necessary for him to pursue his case. Finally, Plaintiff has filed a Motion for Summary Judgment (Dkt. 37), arguing that there is no genuine dispute as to any material fact and thus implicitly conceding that he has all the discovery he needs.

For the foregoing reasons, Plaintiff's request for an extension of time to prepare subpoenas duces tecum will be denied.

2. **Emergency Request for Emergency Injunctive Order**

Plaintiff claims Defendants "and their co-workers" have retaliated against him since the filing of his Complaint in this case. (Dkt. 44 at 1.) He alleges that he was fed human feces infected with the C-diff bacteria, that he has been transferred between facilities without notice or a hearing, that he has been denied adequate medical care, and that he is held in "horrific, torturous, and dangerous living conditions." (*Id*. at 2-3). The Court notes that these allegations are currently before the Court in another of Plaintiff's cases. *See Carr v. Higgens*, 1:13-cv-00380-REB, D. Idaho, filed Aug. 29, 2013).

Preliminary injunctions are governed by Rule 65 of the Federal Rules of Civil Procedure. A Rule 65 preliminary injunction may be granted if the moving party demonstrates the following elements: (1) that the moving party will suffer irreparable injury if the relief is denied; (2) that the moving party will probably prevail on the merits;

**MEMORANDUM DECISION AND ORDER - 3**

(3) that the balance of potential harm favors the moving party; and (4) that the public interest favors granting relief. *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *Cassim v. Bowen*, 824 F.2d 791, 795 (9th Cir. 1987). Because a preliminary injunction is an extraordinary remedy, injunctive relief must be denied "unless the facts and law clearly favor the moving party." *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994) (internal quotation marks omitted). A court "is not obligated to hold a hearing [on a motion for a preliminary injunction] when the movant has not presented a colorable factual basis to support the claim on the merits or the contention of irreparable harm." *Bradley v. Pittsburgh Bd. of Educ.,* 910 F.2d 1172, 1176 (3rd Cir. 1990).

The instant lawsuit concerns actions taken by Defendants Rivera, Hartnett, and Davidson prior to the filing of the Complaint. Because Plaintiff has not supplemented his claims against the existing Defendants for actions occurring after the filing of the Complaint, such as alleged retaliation, the claims in the request for preliminary injunction are arguably outside the scope of the claims in the Complaint. *See De Beers Consol. Mines Ltd. v. United States*, 325 U.S. 212, 220 (1945) (stating that a preliminary injunction is appropriate to grant intermediate relief of "the same character as that which may be granted finally," but inappropriate where the injunction "deals with a matter lying wholly outside of the issues in the suit"). Further, as explained below, Plaintiff has no likelihood of success on the merits of his claims. Therefore, Plaintiff's motion for injunctive relief will be denied.

**MEMORANDUM DECISION AND ORDER - 4**

# CROSS-MOTIONS FOR SUMMARY JUDGMENT

1. **Material Facts**

Plaintiff is currently incarcerated at Idaho Maximum Security Institution, but the events giving rise to Plaintiff's claims occurred while he was incarcerated at the Idaho Correctional Institute in Orofino (ICI-O), sharing a cell with inmate Johnny Castaneda. On approximately October 7, 2010, Plaintiff filed a notice of tort claim with state officials, claiming civil rights violations and seeking $3.5 million in damages. (Pl. Stmt. of Facts, Dkt. 37-2, at 12.)

Plaintiff states that on October 14, 2010—a week after Plaintiff filed the notice of claim—Defendant Davidson came to Plaintiff's cell and told him she was there to conduct a "courtesy move" of Castaneda, which allegedly required that four different inmates consent to change cells. (Pl. Opp. to Def. Motion for Summary Judgment, Dkt. 41, at 2.) Plaintiff told Davidson that there could be no such courtesy move because "someone had forged at least 2 of the 4" signatures required. Davidson told Castaneda, "roll up your stuff Carr's getting a new cellie." (*Id.*) Because Plaintiff was afraid he would be attacked by a new cellmate (something that had happened to Plaintiff in the past), he told Davidson, "If you put another psyco [sic] in my cell that puts his hands on me, I wont [sic] follow policy this time, I'll peel him." (*Id.*) Defendant Davidson describes the incident slightly differently. She states that she informed Castaneda he would be moving to a new cell and that Plaintiff responded, "I will peel anyone who is

moved into this cell without my approval." (Davidson Aff., Dkt. 38-4, at ¶ 5.) The Court accepts Plaintiff's version of the facts for purposes of the cross-motions for summary judgment, but notes that Plaintiff concedes he used the word "peel" in relation to what he might do to a new cellmate under certain circumstances.

Davidson informed Rivera, as well as two other officials, that Plaintiff threatened to "peel" his new cellmate and issued Plaintiff a DOR "because [they] agreed that his statement constituted a serious threat to assault another offender coupled with the ability to carry out the assault if Carr didn't approve of the offender moved into his cell." (*Id*.) As a result, Plaintiff was placed in segregation pending his hearing on the DOR.

Because inmates are not allowed to keep all of their property with them in segregation, Plaintiff's property—including his legal materials—had to be taken to the property office and inventoried. Castaneda has testified that he was ordered by "ICI-O staff" to "roll up" Plaintiff's property. Castaneda states that at the time of the roll up, he saw three manila envelopes among Plaintiff's property. (Castaneda Aff., Ex. 9 to Pl. Motion to Compel, Dkt. 31-2, at 6.) These envelopes contained legal materials, such as Plaintiff's notes and affidavits from other individuals, that Plaintiff was intending to use in a civil rights action he planned on filing, apparently based on the same events at issue in the notice of tort claim. Plaintiff has submitted numerous affidavits from other inmates who have seen the envelopes before, as well as the documents contained therein. (Ex. 1-14 to Pl. Motion to Compel, Dkt. 31-1 to 31-4.)

Although Rivera asserts that Plaintiff consented to Castaneda's participation in the roll up of Plaintiff's property (Rivera Aff., Dkt. 38-6, at 7), the Court will accept, for purposes of this Order, Plaintiff's statement that he did not do so. (Dkt. 41-1 at 5). Plaintiff later saw Rivera and Davidson transporting his property down the stairs. (Carr Aff., Dkt. 31-4, at 5.) When Plaintiff received his property back after he was removed from segregation, the three manila envelopes of legal materials were missing. (Dkt. 37-2 at 15.)

Defendant Davidson has testified that she did not see or confiscate any manila envelopes of legal materials. (Davidson Aff., Dkt. 38-4, at ¶ 6.) Davidson states that she did not participate in the inventory of Plaintiff's property. (*Id*.) Though Davidson also asserts that she had no contact at all with Plaintiff's property (other than delivering some medication to Plaintiff after he was placed in segregation), the Court must accept as true Plaintiff's allegation that Davidson at least helped Rivera move Plaintiff's property to the place where it was inventoried.

Defendant Rivera performed the inventory of Plaintiff's property. He has described his general method of inventorying an inmate's property, as well as the specific inventory at issue here, as follows:

> My practice is to inventory offender property in a structured fashion; separating items allowed in segregation to be given to the offender, searching through paperwork and personal letter for contraband (i.e. pornography, gambling sheets, STG [Security Threat Group] drawings, etc.) and boxing the remaining items for storage.

**MEMORANDUM DECISION AND ORDER - 7**

> If there is any legal work, I noted [sic] it on the inventory and place it in the box of property to be stored. During my inventory I did not see the three large manila envelopes [Plaintiff] claims to have had in his property. Had I noticed them, I would have noted them as separate items on the property inventory because of their size. As it was, I noted a "small box of legal papers" that is detailed in the "comments" section of the property inventory.

(Rivera Aff., Dkt. 38-6, at ¶¶ 8-9.) Rivera states that his shift ended after he "completed going through [Plaintiff's] property and calling out the items" and that Defendant Hartnett finished "the rest of the [inventory] process consisting of filling out the confiscation sheet for confiscated property and disseminating the paperwork. For this reason Hartnett's name is on the property inventory." (*Id*. at ¶ 10.)

For his part, Defendant Hartnett states that he remembers completing a property inventory for Rivera on October 14, 2010, but does not have an independent memory that it was Plaintiff's property. (Hartnett Aff., Dkt. 38-5, at ¶ 6.) Hartnett states that he filled out the paperwork and that all confiscated property was later destroyed when Plaintiff "failed to return property disposition sheets [Hartnett] sent to him." (*Id*.) With respect to Plaintiff's allegations regarding the theft of the three manila envelopes, Hartnett states that he did not take any such envelopes and that he has "no idea if these envelopes existed." (*Id*. at ¶ 7.)

Plaintiff alleges that Defendants Rivera, Hartnett, and Davidson conspired to deprive him of those materials in retaliation for his litigation activities and to stop Plaintiff from filing his contemplated new civil rights lawsuit.

**MEMORANDUM DECISION AND ORDER - 8**

2.  **Summary Judgment Standard**

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment rule "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is not "a disfavored procedural shortcut," but is instead the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327.

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). Rather, there must be no *genuine* dispute as to any *material* fact in order for a case to survive summary judgment. Material facts are those "that might affect the outcome of the suit." *Id.* at 248. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The moving party is entitled to summary judgment if that party shows that each material fact cannot be disputed. To show that the material facts are not in dispute, a party may cite to particular parts of materials in the record, or show that the opposing party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P.

56(c)(1)(A) & (B). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (internal quotation marks omitted). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *So. Ca. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

If the moving party meets its initial responsibility, then the burden shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

Material used to support or dispute a fact must be capable of being "presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Affidavits or declarations submitted in support of or in opposition to a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). If a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may consider that fact to be

undisputed. Fed. R. Civ. P. 56(e)(2). The Court may grant summary judgment for the moving party "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3). The Court may also grant summary judgment to a non-moving party, on a ground not raised by either party, or sua sponte provided that the parties are given notice and a reasonable opportunity to respond. Fed. R. Civ. P. 56(f).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the parties. Although all reasonable inferences which can be drawn from the evidence must be drawn in a light most favorable to the non-moving party, *T.W. Elec. Serv., Inc.*, 809 F.2d at 630-31, the Court is not required to adopt unreasonable inferences from circumstantial evidence, *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

Statements in a brief, unsupported by the record, cannot be used to create an issue of fact. *Barnes v. Indep. Auto. Dealers*, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995). The Ninth Circuit "ha[s] repeatedly held that documents which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment." *Beyene v. Coleman Sec. Services, Inc.,* 854 F.2d 1179, 1182 (9th Cir. 1988) (citation and internal quotation marks omitted). Authentication, required by Federal Rule of Evidence 901(a), is not satisfied simply by attaching a document to an affidavit. *Id.* The affidavit must contain "testimony of a witness with personal knowledge of the facts who attests to the identity and due execution of the document." *Id.*

Where, as here, the parties submit cross-motions for summary judgment, "each motion must be considered on its own merits." *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 136 (9th Cir. 2001).

3.  Discussion

    A.  Standard of Law for § 1983 Claims

Plaintiff asserts his claims under 42 U.S.C. § 1983, the civil rights statute. To state a valid claim under § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by the conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

Prison officials are generally not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). "A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). This causal connection "can be established by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have

known would cause others to inflict a constitutional injury." *Id.* at 1207-08 (internal quotation marks, citation, and alterations omitted).

B.   **Causation**

After carefully considering the entire record and all submissions by the parties in this case, the Court concludes that Plaintiff cannot show a causal link between Defendants' actions and the alleged violations of Plaintiff's constitutional rights.

Plaintiff's claims center around his belief that Defendants are part of a conspiracy to retaliate against him and block his access to the courts, a conspiracy purportedly led by a correctional officer who orchestrated the theft of his legal documents in October 2010:

> The plain truth is Unit Sergeant, Sergeant Roane, was in big trouble for conspiratorially retaliating against Plaintiff for many years and the Plaintiff had evidence in his cell, cell #242 on A-Block on Tier #3, that would not only get her fired and prosecute civil litigation against her, but could have her criminally charged with felonies, so she devised a plan to give the due process appearance to an out and out theft of evidence, *she told c/o Kathy Davidson to take the unlawful and unconstitutional actions she took, Davidson followed those orders, than [sic] tried to conspiratorially cover up relevant fact's [sic] to block court access*, Sgt. Roane has been fired due to these actions . . . .

(Dkt. 41 at 4.) Thus, according to Plaintiff, Davidson took over the conspiracy from Roane and, together with Rivera and Hartnett, conspired to deprive Plaintiff of legal materials he needed to file his $3.5 million civil rights lawsuit. Defendants were allegedly motivated by their displeasure over Plaintiff's litigation activities.

However, Plaintiff cannot establish which of the Defendants stole the three manila

**MEMORANDUM DECISION AND ORDER - 13**

envelopes; in fact, he cannot establish that *anyone* did. Plaintiff concedes that he does not know who took the missing legal documents. In fact, the evidence submitted by Plaintiff shows only that (1) the manila envelopes were among the legal materials he had in his cell before he was placed in segregation; (2) after being placed in segregation Plaintiff saw Defendants Rivera and Davidson taking his property to the property office; (3) Defendant Hartnett signed the property inventory sheet even though Hartnett did not actually perform the inventory; and (4) when Plaintiff was taken out of segregation and received his property back, the manila envelopes were missing. However, this evidence suggests, at most, that the materials might have been lost as a result of inadvertence or negligence. It does not support a conclusion that Defendants purposefully took them.

Plaintiff has no direct evidence of the alleged conspiracy. Rather, he asks the Court to draw unreasonable inferences from circumstantial evidence. *See McLaughlin*, 849 F.2d at 1208. First, Plaintiff claims that Hartnett and Rivera are lying about Hartnett's involvement with Plaintiff's property, alleging that "Harnett was NOT in Property on 10-14-10, he was in 'CENTRAL CONTROL.'" (Dkt. 41-1 at 6) (verbatim). For this proposition Plaintiff cites an "attached Exhibit - 10-22-31 The ICI-O Swing Shift #3 Location and Time Sheet for 10-14-10." (*Id*. at 5.) The exhibit appears to be a chart indicating that Hartnett may have signed into "Central Control" at 2:08 p.m. on October 14, 2010, and signed out at 10:23 p.m. (Ex. to Pl. Response, Dkt. 41-4 at 27.) However, Plaintiff has offered no evidence to establish the authenticity of this document. Plaintiff

merely asks the Court to "view [the] attached exhibit" (Dkt. 41-1 at 5), which is insufficient to show that the document is what Plaintiff claims it to be. *Beyene*, 854 F.2d at 1182 ("A writing is not authenticated simply by attaching it to an affidavit . . . .") (quotation omitted); *see* Fed. R. Evid. 901(a) ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."). Moreover, the Court cannot infer from the chart that Hartnett *never* left Central Control the day Plaintiff's property was inventoried. The chart does not support Plaintiff's claim of conspiracy.

Plaintiff also states that when Davidson and Rivera were transporting his property, he "saw Sgt. Roane at the A3-Tier entrance door motion to them to bring her the property, but on my 'roll up sheet' it said Cpl. Hartnett took my property." (Carr. Aff., Ex. 15 to Pl. Motion to Compel, Dkt. 31-4 at 5.) This minor inconsistency in paperwork, however, is not enough for any reasonable juror to infer that Defendants maliciously stole Plaintiff's legal materials as part of a concerted effort to violate his rights. This is particularly true where, as here, Defendants Rivera and Hartnett have offered an uncontroverted explanation for Hartnett's name being on the inventory paperwork—Hartnett finished that paperwork after Rivera inventoried the property because Rivera's shift had ended.

Put simply, a reasonable juror would be unable to determine that any Defendant took the manila envelopes, either acting alone or as part of a conspiracy. *Anderson*, 477

U.S. at 252. Therefore, Defendant is entitled to summary judgment on Plaintiff's retaliation and access to courts claims.

### C. Additional Grounds for Summary Judgment in Favor of Defendants

Defendants' Motion for Summary Judgment must be granted on the additional grounds that Plaintiff cannot show that any Defendant acted out of a retaliatory motive or that Plaintiff suffered an actual injury to his right of access to the courts.

#### i. Retaliation Claims

Plaintiff claims that his three envelopes of evidence were stolen in retaliation for Plaintiff's litigation activities. To succeed on a First Amendment retaliation claim, a Plaintiff must show the following: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, . . . that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). Although a "chilling effect on First Amendment rights" is enough to state an injury, *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001), "bare allegations of arbitrary retaliation" are insufficient to state a retaliation claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 n.4 (9th Cir. 1985). Although the timing of an official's action can be circumstantial evidence of retaliation, there must generally be something more than simply timing to support an inference of retaliatory intent. *See Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995).

Defendants have submitted the affidavits of Rivera, Davidson, and Hartnett, who all testify they did not know Plaintiff was intending to file a civil rights action and did not retaliate against him by stealing or purposefully misplacing the documents at issue. (Davidson Aff., Dkt. 38-4, at ¶ 7; Hartnett Aff., Dkt. 38-5, at ¶ 7; Rivera Aff., Dkt. 38-6, at ¶ 11.) Plaintiff has not brought forth any evidence tending to raise a genuine issue of fact as to Defendants' intent. Plaintiff's mere belief that Defendants acted with a retaliatory motive is insufficient. *See Rizzo*, 778 F.2d at 532 n.4. Therefore, Defendants are entitled to summary judgment on Plaintiff's retaliation claims.[1]

      ii.      Access to Courts Claims

Plaintiff also claims that he was denied his right of access to the courts as a result of the theft of his legal materials. Prisoners have a constitutional right to access the courts. *Bounds v. Smith*, 430 U.S. 817, 817, 821, 828 (1977). In order to demonstrate that he has a viable access to courts claim, Plaintiff must show that he suffered an actual injury as a result of Defendants' actions. *Lewis v. Casey*, 518 U.S. 343, 349 (1996). Actual injury may be manifest if the alleged denial of access "hindered [Plaintiff's] efforts to pursue a legal claim," such as having his complaint dismissed "for failure to satisfy some technical requirement," or if he "suffered arguably actionable harm that he

---

[1] Plaintiff also alleges that Defendants "allowed" the envelopes to be stolen by Plaintiff's cellmate, Johnny Castaneda. (Pl. Memo in Supp. of Motion for Summary Judgment, Dkt. 37-1, at 17.) Plaintiff claims that Defendants "did make [Castaneda] a state actor by the act of giving a 'direct order' to multi-felon/state convict Johnny Castaneda and having inmate Castaneda 'gather' the legal materials of the Plaintiff." (Pl.'s Stmt. of Facts, Dkt. 37-2, at 3.) However, this allegation supports an inference of negligence at most; it does not support a conclusion that any Defendant ordered Castaneda to help with the roll up of Plaintiff's property "because of" Plaintiff's litigation activities. *Rhodes*, 508 F.3d at 567.

**MEMORANDUM DECISION AND ORDER - 17**

wished to bring before the courts, but was so stymied by [Defendants' actions] that he was unable even to file a complaint." *Id.* at 351. The right of access to the courts is limited and applies only to direct appeals from convictions for which the inmates are incarcerated, habeas petitions, and civil rights actions regarding prison conditions. *Id.* at 354. "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* at 355.

Plaintiff claims he suffered an actual injury to his right of access to the courts because "you cannot prosecute a case in any court (especially U.S. District Court) with NO EVIDENCE, no proof of exhaustion of administrative remedies[,] no proper names, dates and locations of violations." (Dkt. 41 at 13-14.)

However, the loss of evidence that *might* support a future civil rights action is much too speculative to support an access to courts claim. The actual injury requirement cannot be satisfied by an allegation that a qualified legal action would have been easier to prosecute if not for a defendant's actions. Although a prisoner has "a right to bring to court a grievance that the inmate wishe[s] to present," the right of access "does not guarantee inmates the wherewithal to transform themselves into litigating engines." *Lewis*, 518 U.S. at 354-55. Plaintiff claims that he would not have been successful in his civil rights lawsuit without the missing documents to submit as evidence, but he does not explain why he did not even bother to file that lawsuit. Affidavits and other documentary evidence, like knowledge of relevant case law, are not required for anyone to file a

complaint. *See* Fed. R. Civ. P. 8(a) ("A pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction . . . ; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought . . . ."). Plaintiff's allegations simply do not show that he was "so stymied by [Defendants' actions] that he was unable even to file a complaint." *Lewis*, 518 U.S. at 351.

Finally, although Plaintiff implies that he would not have been able to pursue his lawsuit in the absence of proof of exhaustion of administrative remedies, the affirmative defense of non-exhaustion does not work that way. The *defendant* in a civil rights action bears the burden of showing that a prisoner-plaintiff did not exhaust the prison grievance process, *Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005), and an inmate's failure to exhaust is excused if prison officials interfered in the inmate's efforts to exhaust, *Albino v. Baca*, 697 F.3d 1023, 1034, 1039 (9th Cir. 2012). Further, because exhaustion is not a pleading requirement, *Jones v. Bock*, 549 U.S. 199, 216 (2007), losing some of his evidence of exhaustion did not prevent Plaintiff from filing a complaint.

## CONCLUSION

For the foregoing reasons, the Court concludes that there is no genuine dispute as to any material fact in this case, and Defendants are entitled to judgment as a matter of law.

# ORDER

**IT IS ORDERED:**

1. Plaintiff's Request for Extension of Time to File Subpoenas and Requests for Subpoenas (Dkt. 36) is DENIED.

2. Plaintiff's Emergency Request for Emergency Injunctive Order (Dkt. 44) is DENIED.

3. Plaintiff's Motion for Summary Judgment (Dkt. 37) is DENIED.

4. Defendants' Cross-Motion for Summary Judgment (Dkt. 38) is GRANTED, and this case is DISMISSED with prejudice.

DATED: **January 27, 2014**

Honorable B. Lynn Winmill
Chief U. S. District Judge